**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| WILLIAM B. OWENS, ) | CASE NO.  3:10-cv-1801 |
| ) | |
| Plaintiff, ) | |
| ) | MAGISTRATE JUDGE |
| v. ) | VECCHIARELLI |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | **MEMORANDUM OPINION AND** |
| Defendant. ) | **ORDER** |

Plaintiff, William B. Owens ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("the Act").  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I. PROCEDURAL HISTORY

On October 30, 2007, Plaintiff protectively filed an application for DIB. (Tr. 9.) On November 5, 2007, Plaintiff protectively filed an application for SSI. (Tr. 9.) In both applications, Plaintiff alleged a disability onset date of September 1, 2006. (Tr. 9.) Plaintiff's applications were denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 9.)

On July 22, 2009, an ALJ held Plaintiff's hearing by video conference. (Tr. 9.) Plaintiff appeared at his hearing, was represented by counsel, and testified. (Tr. 9.) A vocational expert ("VE") also appeared and testified. (Tr. 9.)

On November 4, 2009, the ALJ found Plaintiff not disabled. (Tr. 18.) On June 23, 2010, the appeals council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On August 16, 2010, Plaintiff timely filed his complaint challenging the Commissioner's final decision. (Doc. No. 1.) On January 14, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 15.) On April 6, 2011, the Commissioner filed his Brief on the Merits. (Doc. No. 18.) Plaintiff did not file a Reply Brief.

Plaintiff contends that the ALJ failed to give good reasons for giving Plaintiff's treating physician's opinion little weight because she "gave no indication" that she considered certain relevant factors in her analysis. (Pl.'s Br. 10.)

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was thirty-three years old on his alleged disability onset date. (Tr. 17.)

2

He has a high school education and is able to communicate in English.  (Tr. 17.)  He has past relevant work as a welder.  (Tr. 16.)

### B. Medical Evidence

Plaintiff concedes that he is limited primarily by his lung condition.  On July 20, 2006, Plaintiff presented to St. Charles Mercy Hospital with complaints of chest pain.  (Tr. 345-46.)  Dr. Mehmet A. Sungurlu, M.D., attended to Plaintiff and indicated that Plaintiff also reported shortness of breath, lightheadedness, and diaphoresis.[1]  (Tr. 345.)  Dr. Sungurlu reported that a chest x-ray revealed "COPD changes with hyperinflation" and "linear scarring," although there was no effusion and Plaintiff's lung fields were clear.  (Tr. 345.)  Dr. Sungurlu's provisional diagnosis was chest pain, although Dr. Sungurlu ruled out acute coronary syndrome.  (Tr. 345.)

Plaintiff continued to suffer chest pain and present to the emergency room in November 2006.  (Tr. 216-21.)  On November 6, 2007, Dr. Manuel V. Madrazo, M.D., attended to Plaintiff and diagnosed Plaintiff with "atypical chest pain" and "bullous emphysema."  (Tr. 221.)  On November 7, 2006, Dr. Daniel B. Fought, D.O., attended to Plaintiff and assessed Plaintiff with a "bleb"[2] and "juvenile onset chronic obstructive pulmonary disease."[3]  (Tr. 219.)  On November 14, 2006, Dr. Gregory Jeppesen, D.O.,

---

[1] Diaphoresis is otherwise known as profuse sweating.  Dorland's Illustrated Medical Dictionary 509 (30th ed. 2003).

[2] A bleb is otherwise known as a "bulla" or "blister" and is "a large elevation on the skin, containing serous or seropurulent fluid."  Dorland's Illustrated Medical Dictionary, *supra* note 1, at 259.

[3] Chronic obstructive pulmonary disease is otherwise known as "COPD."  Dorland's Illustrated Medical Dictionary, *supra* note 1, at 416.

3

attended to Plaintiff and diagnosed Plaintiff with "pleurisy"[4] and "emphysematous disease." (Tr. 217.) Dr. Jeppesen indicated that Plaintiff was discharged with instructions to use an inhaler for his shortness of breath, finish taking antibiotics, and "follow up with Dr. Jain as scheduled." (Tr. 217.)

On January 25, 2007, Plaintiff presented to Dr. Navin Jain, M.D., and underwent a pulmonary function test ("PFT"). (Tr. 225.) Dr. Jain interpreted the test and reported the following. Plaintiff had a "restrictive ventilatory defect of moderate severity." (Tr. 225.) There was no significant improvement after Plaintiff was given bronchodilators. (Tr. 225.) The diffusing capacity of Plaintiff's lungs for carbon monoxide ("DLCO") was moderately reduced, but Plaintiff's airway resistance was normal. (Tr. 225.)

On September 4, 2007, Plaintiff presented to the emergency room with a complaint of a sharp pain in his left shoulder. (Tr. 239.) Dr. Jain attended to Plaintiff and reported the following. Plaintiff suffered "left pneumothorax."[5] (Tr. 239.) A small bore chest tube proved ineffective to relieve the pneumothorax, so a wide bore chest tube was inserted. (Tr. 239.) Plaintiff also underwent a Thoracic Surgery consultation. (Tr. 239.) Although an x-ray showed that Plaintiff continued to suffer 20% to 30% pneumothorax, Plaintiff declined surgery and requested that the chest tube be removed. (Tr. 239.) Dr. Jain complied with Plaintiff's request, and Plaintiff was

---

[4] The "pleura" is "the serous membrane investing the lungs and lining the thoracic cavity, completely enclosing a potential space known as the pleural cavity." Dorland's Illustrated Medical Dictionary, *supra* note 1, at 1451. Pleurisy is "inflamation of the pleura, with exudation into its cavity and upon its surface." *Id.*

[5] Pneumothorax is "an accumulation of air or gas in the pleural space." Dorland's Illustrated Medical Dictionary, *supra* note 1, at 1467.

discharged with instructions to quit smoking and continue using bronchodilators. (Tr. 239.)

On December 14, 2007, Plaintiff presented to Dr. Sushil M. Sethi, M.D., for a physical examination upon the request of the Bureau of Disability Determination. (Tr. 375-77.) Dr. Sethi indicated that Plaintiff reported the following. Beginning September 7, 2007, Plaintiff suffered spontaneous pneumothorax. (Tr. 375.) Plaintiff now suffered general tightness in his left chest, became dizzy after long bouts of coughing, could not stand or walk "too long," and had difficulty lifting heavy objects. (Tr. 375.) Plaintiff did not use oxygen, but occasionally took Vicodin to alleviate his chest pain and periodically used an inhaler. (Tr. 375.) Although Plaintiff used to smoke a pack of cigarettes a day, after the onset of his pneumothorax he smoked only two or three cigarettes a day. (Tr. 375.)

Upon physical examination, Dr. Sethi's impression was that Plaintiff suffered "severe restrictive pulmonary disease," and had a history of asthma and spontaneous pneumothorax. (Tr. 377.) Dr. Sethi concluded that Plaintiff's "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects and traveling is limited." (Tr. 377.)

On March 11, 2008, Plaintiff presented to the emergency room with complaints of chest pain and shortness of breath. (Tr. 440-47.) Dr. Jeppesen attended to Plaintiff, reviewed a chest x-ray, and reported that "there was evidence of COPD on the x-ray, but nothing acute." (Tr. 443.) Dr. Jeppesen assessed Plaintiff with "pleuritic left sided chest pain," and indicated that Plaintiff was discharged with instructions to take Vicodin to alleviate the pain. (Tr. 443.)

5

On May 7, 2008, Plaintiff presented to Dr. Nester P. Zambrano, M.D., at Neighborhood Health Association to establish a primary care relationship.  (Tr. 451.)  On August 7, 2008, Plaintiff presented to Dr. Zambrano with a complaint of pain in his left lung when he breathed.  (Tr. 458.)  Dr. Zambrano advised Plaintiff to go to the emergency room as soon as possible.  (Tr. 458.)  A week later, Plaintiff followed up with Dr. Zambrano to obtain x-ray results.  (Tr. 457.)  Dr. Zambrano reported that Plaintiff had not gone to the emergency room as Dr. Zambrano had advised (457), and that the x-ray evidenced left-sided pleural effusion (Tr. 438).  Plaintiff continued to see Dr. Zambrano in relation to his COPD and anxiety through the rest of 2008 and until April 23, 2009, although Plaintiff did not keep his appointments on two occasions.  (Tr. 453-55.)

On November 19, 2008, state agency medical consultant John A. Pella, M.D., provided testimony by affirmation of Plaintiff's physical residual functional capacity ("RFC").  (Tr. 416-18.)  Dr. Pella opined that Plaintiff could lift 10 pounds frequently and 20 pounds occasionally, and that Plaintiff could sit, stand, and walk for about 6 hours in an 8-hour day.  (Tr. 417.)  Dr. Pella further opined that Plaintiff's abilities to push, pull, bend, stoop, and crouch were not affected, but that Plaintiff should have no exposure to respiratory irritants and extremes of environmental temperatures.  (Tr. 417.)

On September 11, 2009, Dr. Sethi examined Plaintiff and authored a medical source statement at the request of the Bureau of Disability Determination.  (Tr. 474-503.)  Dr. Sethi was of the impression that Plaintiff had severe obstructive pulmonary disease with no improvement with bronchodilators, a history of spontaneous pneumothorax of the left chest, and arthritic symptoms.  (Tr. 476.)  Dr. Sethi concluded,

6

based on his objective findings, that Plaintiff's "ability to do work-related physical activities such as sitting, standing, walking, lifting, carrying and handling objects may be slightly limited." (Tr. 476.)

Dr. Sethi's specific physical RFC findings are as follows. Plaintiff could lift and carry between 21 and 60 pounds occasionally, between 11 and 20 pounds frequently, and up to 10 pounds continuously. (Tr. 489.) Plaintiff could sit for 4 hours at a time without interruption and for a total of 4 hours in an 8-hour work day. (Tr. 490.) Plaintiff could stand and walk for 2 hours at a time without interruption and for a total of 3 hours in an 8-hour work day. (Tr. 490.) Plaintiff could continuously reach, handle, finger, feel, push, and pull with both hands. (Tr. 491.) Plaintiff could continuously operate foot controls with both feet. (Tr. 491.) Plaintiff could also frequently climb stairs, ramps, ladders, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. (Tr. 492.) Furthermore, Plaintiff could frequently work in unprotected heights; work around moving mechanical parts; operate a motor vehicle; and tolerate humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat and cold, vibrations, and "other" environmental conditions. (Tr. 493.)

On October 2, 2009, Dr. Zambrano completed a medical source statement regarding Plaintiff's physical RFC. (Tr. 504-05.) Dr. Zambrano's opinion of Plaintiff's physical RFC is as follows. Plaintiff could sit, stand, and walk for 15 minutes at a time and for a total of 1 hour in an 8-hour work day. (Tr. 504.) Plaintiff could lift and carry 10 pounds occasionally and less than 5 pounds frequently. (Tr. 504.) Plaintiff could never stoop, reach, twist, climb stairs, work around hazardous machinery, tolerate heat and cold, and tolerate dust, smoke, or fumes. (Tr. 504.) Plaintiff could occasionally

7

balance, finger, handle, walk on uneven ground, and operate hand and foot controls. (Tr. 504.)  Plaintiff needed to elevate his legs for 2 hours and lie down for 2 hours in an 8-hour workday (Tr. 504); required an assistive device to walk (Tr. 505); and had limited distance vision (Tr. 505).  Plaintiff suffered moderate to severe pain and took medications that would adversely affect his work performance.  (Tr. 505.)

### C. Hearing Testimony

#### 1. Plaintiff's Testimony

Plaintiff testified at his hearing as follows.  Plaintiff smokes only one cigarette a week. (Tr. 33.)  He is not able to stand all day because he has a hard time breathing, becomes dizzy and short of breath, and suffers constant pain.  (Tr. 26-27.)  He takes medication to relieve his pain, but it does not alleviate his pain very well.  (Tr. 27.)  His lung collapses once every one or two weeks, which causes him great pain, and he requires three to five days to recover.  (Tr. 34-35.)  When his lung collapses, he needs to lie down or sit in a reclining chair, and he is not able to perform any activities.  (Tr. 35.)

Plaintiff is able to walk about one block before he becomes dizzy and loses his breath, and he is able to stand for only 10 to 15 minutes before his low back begin to ache.  (Tr. 29-30.)  He has difficulty lifting a full gallon of milk and usually needs to use both hands to do so.  (Tr. 30.)  He lives with his mother and does not engage in daily household activities or drive; he spends most of his time in bed or sitting in a chair.  (Tr. 31.)

#### 2. The VE's Testimony

The ALJ posed the following hypothetical person to the VE:

> I want you to assume . . . an individual the Claimant's age, education, and past work experience who could lift . . . 10 pounds frequently and 20 pounds occasionally. Who could sit for six hours in an eight-hour work day, stand and walk in combination a total of six hours in an eight-hour work day. He should not be exposed to any extreme cold, extreme heat, or atmospheric conditions that would cause any kind of pulmonary irritants like gas, dust, fumes, et cetera. In addition, this individual should do only simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes and limited contact with others.

(Tr. 38-39.) The VE testified that such a hypothetical person could not perform Plaintiff's past relevant work, but could perform other work as a cafeteria attendant (for which there were approximately 200 to 250 jobs in the region and 15,000 jobs in the state), office helper (for which there were approximately 350 to 400 jobs in the region and 5,000 jobs in the state), and stock checker (for which there were approximately 400 to 450 jobs in the region and 9,000 jobs in the state). (Tr. 39-40.)

The ALJ then posed a second hypothetical to the VE:

> I want you to assume an individual the Claimant's age, education, and past work experience who could lift up to 10 pounds. And could sit for six hours in an eight-hour workday, stand and walk a total of two hours in an eight-hour workday. Again, there should be no exposure to extreme cold or heat or atmospheric conditions involving pulmonary irritants like gas, dust, fumes. The individual is limited to simple, routine, repetitive tasks involving short, simple instructions in an environment with few work place changes and limited contact with others.

(Tr. 40-41.) The VE testified that such a person could perform work as a spotter (for which there were approximately 100 to 150 jobs in the region and 3,000 jobs in the state), sorter (for which there were approximately 100 to 150 jobs in the region and 4,000 jobs in the state), and final assembler (for which there were approximately 150 to 200 jobs in the region and 6,000 jobs in the state). (Tr. 41.)

Upon questioning by Plaintiff's attorney, the VE further testified that a person

9

who suffered a collapsed lung once every two weeks that kept him from work for three to five days at a time would be precluded from performing any jobs in the national economy.  (Tr. 42.)  Moreover, upon questioning by Plaintiff's attorney, the VE testified that a person who could walk for only half a block, stand for 10 minutes at a time, and sit for 15 minutes at a time could perform the second set of jobs he offered because those jobs would provide the opportunity to change positions from sitting to standing at will without interfering with work.  (Tr. 42.)

### III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of

disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2011.

2. The claimant has not engaged in substantial gainful activity since September 1, 2006, the alleged onset date.

3. The claimant has the following severe impairments: restrictive lung disease, history of spontaneous pneumothorax, and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work . . . except the claimant' [sic] exposure to pulmonary irritants such as gas, dust, and fumes should be very limited. Additionally, he is limited to

>     simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes and limited contact with others.
>
> 6.  The claimant is unable to perform any past relevant work.
>
> . . . . .
>
> 9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from September 1, 2006 through the date of this decision.

(Tr. 11-18.)

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir.

1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.     The ALJ's Assessment of Plaintiff's Treating Physician's Opinions**

Plaintiff argues that the ALJ erred in her assessment of Plaintiff's treating physician, Dr. Zambrano, because the ALJ "gave no indication" that she considered certain relevant factors and failed to provide good reasons for giving Dr. Zambrano's opinion regarding Plaintiff's physical RFC less than controlling weight. For the following reasons, the Court disagrees.

An ALJ must give the opinion of a treating source controlling weight if she finds the opinion well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole,

13

and the specialization of the treating source—in determining what weight to give the opinion. *Id.* The Social Security regulations also contain a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [a claimant's] treating source's opinion." *Id.* Pursuant to this procedural requirement, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (1996)).

> The ALJ's assessment of Dr. Zambrano's opinion is as follows:
>
> I am giving little weight to the opinion reported by Dr. Zambrano on October 2, 2009. Dr. Zambrano's assessment limits the claimant to less than sedentary work without explanation as to those limitations. The only thing he notes is that the claimant has COPD and a history of spontaneous pneumothorax that supposedly account for his complaints of pain. The doctor's contemporaneous treatment records do not support severe restrictions on activities. Those records show largely unremarkable findings.
>
> Furthermore, some of the restrictions posited by Dr. Zambrano seem unrelated to anything he noted on exam. For example, he states that the claimant can only occasionally handle and finger and never reach, but there is no reason given and he makes to [sic] correlation between these restrictions and COPD or a history of pneumothorax. Dr. Zambrano also states that the claimant needs to elevate his legs two hours per day, use an assistive device to walk, and has limited distance vision. However, the record does not support these restrictions. I afford little weight to Dr. Zambrano's opinion from October 2009 in that it is conclusory, inconsistent with the doctor's own findings, and inconsistent with the record as a whole.

(Tr. 16) (internal citations omitted). Plaintiff provides no explanation of how the ALJ's analysis of Dr. Zambrano's opinion is deficient and cites no legal authority in support of his contention that the analysis is inadequate. To the contrary, the ALJ's analysis of Dr.

14

Zambrano's opinion is thorough and sufficiently specific to make clear why she gave Dr. Zambrano's opinion little weight, and there is no basis to conclude that the ALJ failed to consider the factors required under the law.  Cf. *Morris v. Barnhart*, 223 F. App'x 465, 468 (6th Cir. 2007) ("Our review reveals that the ALJ provided a lengthy and thorough discussion of these doctors' reports and findings.  Unlike in *Wilson v. Comm'r*, 378 F.3d 541, 545 (6th Cir. 2004), on which Morris heavily relies, the ALJ did not summarily dismiss the treating physicians' opinions.").  Accordingly, this assignment of error lacks merit.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.

                                         s/ *Nancy A. Vecchiarelli*
                                         U.S. Magistrate Judge

Date: September 14, 2011